# Murray McConnel

## *v.*

# Jairus Kibbe.

PARTITION — *estates subject to.* To be the subject of partition under our statute, an estate must be held jointly, in common, or in coparcenary. Premises belonging in severalty to two, and no portion of them belonging jointly to both, are not subject to partition under our statute, or under any proceeding known in courts of equity.

WRIT OF ERROR to the Circuit Court of Morgan county ; the Hon. D. M. WOODSON, Judge, presiding.

The facts sufficiently appear in the opinion of the court.

Mr. M. McConnel, plaintiff in error, *pro se.*

Mr. H. B. McClure, for the defendant in error.

Mr. Justice Breese delivered the opinion of the Court:

This was a bill in chancery exhibited in the Morgan Circuit Court by Murray McConnel, complainant, against Jairus Kibbe, defendant, for partition of a certain house and lot of ground in Jacksonville, in that county. The cause proceeded to a final hearing on the bill, answer and testimony, resulting in a decree dismissing the bill. To reverse this decree, this writ of error is prosecuted by complainant.

The nature of the controversy will be understood from a brief statement of the leading facts.

The property in question was a large two story brick building, and an L, once used as a hotel, and known as "The Morgan House." Kibbe purchased it of one Davenport, who had purchased it at a sale made by William Thomas, the master in chancery of Morgan county, acting under a decree of the Circuit Court of that county. Prior to the execution of the deed to him by the master, Kibbe sold to McConnel designated portions of the building, and, by arrangement between them, the master executed to McConnel a separate deed to him for his portion, and a separate deed to Kibbe for the portion he retained.

To ascertain precisely the rights of these parties, and what interests they respectively hold, resort must be had to these deeds.

In the deed to Kibbe, it is recited, that "said Kibbe retains of the purchase made by him of Davenport, the following parts of the said premises: First, the ground on which the main building of the Morgan house stands, and the said house up to the second story, as it now stands, said story being ten feet high, more or less, from the ground floor to the center of the joists of the second floor," the ground is then described by metes and bounds, "and which said ground is retained by said Kibbe, the said McConnel having the right to use and occupy forever,

the cellar under the west side of the said main building, and to pass to and from the same by passages and doors now in use, as well as such passages and doors as he may hereafter make; second, Kibbe retains the ground on which that part of the (L) ell to the Morgan house stands, which was purchased, and the building up to the second story as it now stands, the said story being nine feet high, more or less, from the ground floor to the middle of the joists of the second floor, said ground is bounded as follows," etc., here follows the boundaries : " third, Kibbe retains the right to use the well on the premises, and of having access to the same from his premises forever, and also, the right to use the passages opened, and to be opened, through and around the premises for the use of all the owners of the property purchased of said Davenport, as hereinbefore stated ; fourth, the right of way three feet wide, and not less than seven feet high between the brick wall last named, and the north wall of the main building of the Morgan house; fifth, the right of way three feet wide, on the west side of the (L) ell, extending from the center of the brick wall on the north line of the purchase from Davenport to the north line of the main building, and, the said Kibbe having complied with the terms of sale," etc., " the said Thomas, in consideration of the premises, and by virtue of the power vested in him by the said decree, does hereby grant, bargain, sell and convey unto the said Kibbe, the parts of the said premises retained by him as aforesaid, together with the appurtenances thereof, subject, however, to a vendor's lien, etc. To have and to hold the said premises to him the said Kibbe," etc.

The deed from the master in chancery to McConnel, describes his interest, after reciting the above provisions in the deed to Kibbe, as follows: " And said Kibbe, subsequently, sold to said McConnel, the following parts of the premises, purchased by him as aforesaid, at three thousand dollars, payable to the owner of the premises, as part of the purchase money, payable to (by) said Kibbe, as aforesaid, viz., the ground and premises following : first, beginning at the north-east corner of the main building of the Morgan house fifty feet, more or less north of the south-east corner of said lot sixty-one, running

from thence north eleven feet fourteen inches, more or less, to the center of a brick partition wall, running east and west, thence west thirty-one feet six inches, thence south eleven feet fourteen inches, more or less, to the wall of the main building of the Morgan house, and thence east to the beginning, subject to a right of way, which is hereby reserved, for a passage, three feet wide, and not less than seven feet high, from the door in the south end of the kitchen to the north end of the main building, which is to be opened, and kept open, so that it may be used as a passage at all times forever; second, the right of way for a passage, three feet wide on the west side of the west line of the aforesaid eleven feet fourteen inches, extending the whole breadth thereof, also, a right of way three feet wide, extending twenty-one feet north, from the north end of the last named passage, which two passages, three feet wide as aforesaid, are to be kept open, and used in common by all of the owners of the property purchased by said Davenport, as aforesaid; third, the right of way for a passage, three feet wide, from the termination north of the last named passage to the north end of lot sixty-one, by the lines and courses set out in this deed in describing the property purchased by said Kibbe, which last named passage, by the lines and courses aforesaid, is granted to said McConnel, and his heirs and assigns; fourth, the use of the cellar forever under the west side of the main building of the Morgan house, and the right of passing to and from the same by doors and passages now in use, as well as such other doors and passages as said McConnel may hereafter make; fifth, the Morgan house, and that part of the L to the same, purchased by said Kibbe above the first story of each building, as they now stand, the first story of the Morgan house being ten feet high, more or less, from the ground floor to the middle of the joists of the second floor, and the first story of the ell, being nine feet high, more or less, from the ground floor to the middle of the joists of the second floor, said McConnel to have, use, and occupy the said building above the first stories, aforesaid, forever, and, in case of the destruction of the said buildings, or either of them,

said McConnel to have the right to make and continue up walls upon walls, which may be made for any new building to any height consistent with the safety of the building; which said premises, being purchased by said McConnel, as aforesaid, he, the said McConnel, pays the sum of seven hundred and fifty dollars of the purchase money, payable by said Kibbe, and executes three promissory notes, etc., and agrees that a vendor's lien be retained upon the premises purchased by him for the payment of said promissory notes. Wherefore, in consideration of the premises, and by virtue of the power vested in him by the decree herein recited, he, the said Thomas, does hereby grant, bargain, sell and convey unto him, the said McConnel, the ground and premises sold to him by said Kibbe, as hereinbefore described, together with the appurtenances thereof, subject to a vendor's lien, etc. To have and to hold the same unto him, the said McConnel, and his heirs and assigns forever."

The parties went into possession of their respective portions, and were so in possession at the time of filing the bill of complaint. Kibbe commenced making alterations in his portion of the building, consisting chiefly in the removal of a partition wall, which divided his part into two rooms, so as to make one large store-room for the sale of goods and merchandise, leaving portions of this wall standing to support the upper floors. McConnel, also, made alterations to suit his fancy in the upper rooms. McConnel complained that the removal, by Kibbe, of this wall caused his portion of the building to settle to his injury, and for that he brought an action at law, and, having failed to recover, he brought the record to this court, and the judgment was affirmed. 33 Ill. 175.

The condition of the property being so anomalous, and causing much irritation and litigation between the parties, McConnel proposed to have the property valued, and he would give Kibbe his share of the valuation, or would take from Kibbe his own share of the valuation, so that the property might be the exclusive property of one or the other; or that a sale should be made, and the proceeds thereof divided accord-

ing to their respective interests in the property, both which propositions Kibbe declined.

McConnel then filed this bill for a partition, which, on the hearing, was dismissed, for the reason that a court of chancery had no jurisdiction of the subject, there being no joint estate in the property shown, but a separate estate, in separate and distinct parts thereof, as shown by the deeds of the master in chancery.

It is contended by the counsel for the defendant in error, that, inasmuch as there is no joint estate, and no joint possession, or right to possession, of the parts of the lot and house conveyed by the master, there can be no division or partition, and all questions arising between the parties, in regard to their respective rights in the lot and house, are to be determined upon the same principles applicable to separate and independent proprietors of adjoining tracts of land; and he insists that the bill is founded on the novel idea of compulsory fusion of estates by the power of the court, to be followed by a sale, and finally by a distribution, and *that* to be made upon principles as novel as the project of fusion, for which, he insists, there is no authority or precedent.

On the other hand, the plaintiff in error claims that all men have a legal right to a partition of property held jointly, and on this idea he says his bill is based.

Admitting this proposition, which is made by complainant the foundation of his claim, this case must fall to the ground, for the fact is undeniable that the estates created by the master's deeds are not joint, but several. Portions of the premises particularly described belong in severalty to each of these parties, and no portion of it jointly to both. They have a common property in the easements and walls, but no such interest as is susceptible of division under our statute regulating the partition of estates, or under any proceeding known in courts of equity, for they parcel out such estates only as are held jointly, in common or in coparcenary.

The complicated nature of these several holdings as shown in the bill, and the litigation to which they have given rise,

and may hereafter prompt, is unfortunate, perhaps, for both parties, but we are not aware of any principle of law or equity which can compel either party to dissolve the connection, or to part with his separate portion of the premises.

We are satisfied neither a court of law nor equity has jurisdiction over the case as presented by these pleadings, and accord with appellee in the proposition that no power exists to compel the fusion of these estates, to be followed by a sale and finally by a distribution of the proceeds. The idea of the plaintiff in error that he and the defendant in error hold this property jointly, is not supported by the title deeds. They are neither joint-tenants, tenants in common nor coparceners, but they severally, each for himself, own distinct parts and portions of the premises, the character of which a court of chancery has no power to change. The Circuit Court could pass no other decree than the one entered, dismissing the bill on the hearing, as to all the matters therein, except for a conveyance of the middle cellar under the Mansion house. The decree is affirmed. The abstract of plaintiff in error not having been in compliance with rule eleven of this court, and the defendant in error having furnished a full abstract, the costs of the same will be taxed against the plaintiff in error.

*Decree affirmed.*